1    C. Keith Greer, Esq. (State Bar No. 135537)    (SPACE BELOW FOR FILING STAMP ONLY)
     **GREER & ASSOCIATES, A.P.C.**
2    17150 Via Del Campo, Suite 100
     San Diego, California 92127
3    Telephone: (858) 613-6677
     Facsimile: (858) 613-6680
4

5    Frederick Gaston Esq. (State Bar No. 231179)
     **GASTON & GASTON, A.P.L.C.**
6    1010 Second Avenue, 24th Floor
     San Diego, CA 92101
7    Telephone: (619) 398-1882
     Facsimile: (619) 398-1887

8    Attorneys for Plaintiffs,
     REBECCA ZAHAU, deceased,
9    ROBERT ZAHAU, deceased,
     ESTATE OF REBECCA ZAHAU,
10    ESTATE OF ROBERT ZAHAU,
     MARY ZAHAU-LOEHNER,
11    and PARI Z. ZAHAU

12

13        **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

14             **COUNTY OF SAN DIEGO**

15    REBECCA ZAHAU, deceased, through )   Case No. 37-2013-00075418-CU-PO-CTL
     her personal representative, MARY )
16    ZAHAU-LOEHNER; ROBERT )   **SECOND AMENDED COMPLAINT**
     ZAHAU, deceased, through his personal )   **FOR:**
17    representative, MARY )
     ZAHAU-LOEHNER; ESTATE OF )   **(1) WRONGFUL DEATH**
18    REBECCA ZAHAU; ESTATE OF )   **(2) BATTERY**
     ROBERT ZAHAU; both estates )   **(3) ASSAULT**
19    represented by MARY )   **(4) NEGLIGENCE**
     ZAHAU-LOEHNER, an individual; and )   **(5) CONVERSION**
20    PARI Z. ZAHAU, an individual, )
                              )   **JURY TRIAL DEMANDED**
21        Plaintiffs, )
                              )
22    vs. )
                              )
23    ADAM SHACKNAI, an individual; )
     DINA SHACKNAI, an individual; )
24    NINA ROMANO, an individual, and )
     DOES 1 through 50, inclusive, )
25                               )
26        Defendants. )

EXHIBIT C

27

28       REBECCA ZAHAU, deceased, through her personal representative MARY

1   ZAHAU-LOEHNER; ROBERT ZAHAU, deceased, through his personal

2   representative MARY ZAHAU-LOEHNER; ESTATE OF REBECCA ZAHAU;

3   ESTATE OF ROBERT ZAHAU; both estates represented by MARY

4   ZAHAU-LOEHNER, an individual; and PARI Z. ZAHAU, an individual

5   (hereinafter collectively referred to as "Plaintiffs"), complain of Defendants

6   ADAM SHACKNAI, an individual; DINA SHACKNAI, an individual; and NINA

7   ROMANO, an individual, and DOES 1 through 50, inclusive, (hereinafter

8   collectively referred to as "Defendants") on information and belief as follows:

9                    **JURISDICTION AND VENUE**

10      1.      The acts and omissions described herein took place in San Diego

11  County, in the State of California.

12      2.      Venue is proper in that the acts and omissions giving rise to the claims

13  for relief occurred in San Diego County, in the State of California.

14      3.      Plaintiffs are informed and believe and thereon allege that all times

15  mentioned herein, Defendants, and each of them, were all present in San Diego

16  County, in the State of California, during the events giving rise to the claims for

17  relief.

18              **EQUITABLE AND STATUTORY TOLLING**

19      4.      On July 12, 2013, one day prior to the two-year statute of limitations

20  expiring on claims arising from the July 13, 2011 murder of Rebecca Zahau,

21  Plaintiffs filed an action against Defendants ADAM SHACKNAI, DINA

22  SHACKNAI,  NINA ROMANO and DOES 1 through 50, in the United States

23  District Court, Southern District of California (Case Number:13-CV-1624-W-NLS)

24  based on diversity jurisdiction over the first cause of action (wrongful death)

25  pursuant to 28 U.S.C. § 1332 and supplemental jurisdiction over the second cause

26  of action (assault and battery), third cause of action (negligence) and fourth cause

27  of action (conversion) pursuant to  28 U.S.C. § 1367 (collectively, the "survival

28  actions").

1    5.    On November 12, 2013, the District Court dismissed the federal action

2    without prejudice.  Therefore, the statute of limitations for all causes of action of

3    the named Plaintiffs arising from the murder of Rebecca Zahau are tolled under the

4    doctrine of equitable tolling to this date, November 13, 2013. Thus, this action is

5    timely filed. Plaintiffs pursued jurisdiction in Federal Court in good faith and this

6    Court's denial of jurisdiction would result in the survival claims of Rebecca Zahau

7    being without a judicial forum for resolution. The Defendants are not prejudiced by

8    this court accepting jurisdiction as they were given notice of the claims alleged

9    herein when the were previously served wit the timely filed Federal complaint.

10    6.  Moreover, because the Federal Court subsequently granted, in part,

11    Plaintiff's motion for leave to file and amended complaint, holding that the

12    applicable statute of limitations related back to the original filing on July 12, 2011,

13    the Federal Court's dismissal with prejudice of Plaintiff Rebecca Zahau's survivor

14    claims did not occur until the date of that order, i.e., March 13, 2014. Therefore,

15    pursuant to 28 U.S.C. 1367(d), the statute of limitations on the survivor claims is

16    tolled until 30 days after the dismissal with prejudice, i.e., March12, 2014. Since

17    the instant complaint was filed before this date, it is also timely filed on statutory

18    grounds.

19    **DEMAND FOR JURY TRIAL**

20    7.    Plaintiffs demand a jury trial.

21    **IDENTIFICATION OF THE PARTIES**

22    8.    Plaintiff, PARI Z. ZAHAU ("PARI") is a competent adult who is the

23    mother and only surviving parent of  REBECCA ZAHAU, deceased.  PARI is also

24    the surviving spouse of ROBERT ZAHAU, the father of REBECCA ZAHAU, who

25    passed away on July 9, 2013.  PARI is, and at all times herein mentioned was, a

26    citizen and resident of Buchanan County, State of Missouri.

27    9.    Plaintiff,  MARY ZAHAU-LOEHNER ("MARY") is a competent adult

28    who is the sister and personal representative for REBECCA ZAHAU, deceased, and

1  the daughter and personal representative of ROBERT ZAHAU, deceased, and is

2  acting as the executor of the ESTATE OF REBECCA ZAHAU and the ESTATE

3  OF ROBERT ZAHAU. Per Cal. Code Civ. Proc. § 377.30, MARY, as the personal

4  representative for REBECCA ZAHAU, has standing to commence REBECCA's

5  survival actions. Per Cal. Code Civ. Proc. § 377.30, MARY, as the personal

6  representative for ROBERT ZAHAU, has standing to bring ROBERT's wrongful

7  death action. MARY is, and at all times herein mentioned was, a citizen and

8  resident of Buchanan County, State of Missouri.

9          10.    Plaintiff, REBECCA ZAHAU, deceased, ("REBECCA" or

10  "DECEDENT") will be represented by Plaintiff MARY, as personal representative.

11  REBECCA died intestate without a surviving or predeceased spouse or domestic

12  partner, and had no issue. At the time of her death on July 13, 2011, REBECCA

13  was a citizen and resident of the State of Arizona. Therefore, at the time of her

14  death, her mother PARI and now deceased father, ROBERT ZAHAU were her only

15  legal heirs pursuant to Arizona Revised Statutes, Section 14-2103.

16          11.    Plaintiff, ROBERT ZAHAU, deceased, ("ROBERT") is represented by

17  Plaintiff MARY, as personal representative. ROBERT died intestate on July 9,

18  2013. At the time of his death and at all times herein mentioned herein, ROBERT

19  was a citizen and resident of Buchanan County, State of Missouri. Pursuant to

20  Revised Statutes of Missouri, Section 474.010, PARI, his surviving spouse, is

21  ROBERT's sole heir.

22          12.    Defendant, ADAM SHACKNAI ("ADAM") is a competent adult who

23  is, and at all times mentioned in this Complaint was, a citizen and resident of Shelby

24  County, State of Tennessee.

25          13.    Defendant, DINA SHACKNAI ("DINA") is a competent adult who is,

26  and at all times mentioned in this Complaint was, a citizen and resident of Maricopa

27  County, State of Arizona.

28          14.    Defendant, NINA ROMANO ("NINA") is a competent adult who is,

1   and at all times mentioned in this Complaint was, a citizen and resident of San

2   Joaquin County, State of California.

3        15.    The true names or capacities, whether individual, corporate, associate,

4   or otherwise, of Co-Defendants DOES 1 through 50, inclusive, and each of them,

5   are not presently known to Plaintiffs, who therefore sues said Defendants by such

6   fictitious names and will ask leave of Court to amend this Complaint accordingly

7   when their true names and capacities have been ascertained.  Plaintiffs are informed

8   and believe and thereon allege that each of the Defendants designated as a DOE is

9   legally responsible in some manner for the events and happenings herein referred to

10  and proximately thereby caused injury and damages to the Plaintiffs as hereinafter

11  alleged.

12  **GENERAL ALLEGATIONS**

13       16.    On or around the early morning of July 13, 2011, Defendants ADAM,

14  DINA and NINA, and each of them, conspired to plan, and did in fact, enter into a

15  common scheme of conduct with the intent to murder REBECCA in Coronado,

16  California, and did in fact, murder REBECCA by each of them personally

17  committing one or more of the following acts in furtherance of the common scheme

18  and conspiracy:

19      (a) striking REBECCA on the head multiple times with a blunt instrument;

20      (b) physically restraining her;

21      (c) further restraining her by binding her legs with tape;

22      (d) gagging her;

23      (e) binding her hands behind her back with rope;

24      (f) binding her ankles together with rope;

25      (g) removing the previously placed tape from her legs;

26      (h) strangling her to the point of unconsciousness or death;

27      (i) making and placing a rope noose around her neck;

28      (j) tying the other end of the rope leading to the noose to a bed;

(k) carrying her to the adjacent balcony and pushing her over the railing of the balcony causing her to fall and, if she was still alive at that time, to then die by asphyxiation.

(l) during the course of the conspiracy to murder REBECCA, each of the Defendants also kept watch to avoid detection and removed evidence of the acts which they committed, including wiping down objects they had touched in order to remove DNA and finger prints; and

(m) as a further ploy to cover up their wrongdoing, and in furtherance of their common scheme, Defendants painted the following words on the inside of door near the balcony where she was left hanging:

SHE SAVED HIM

CAN YOU SAVE HER

17.   On the morning of July 13, 2011, REBECCA was found dead, naked, bound and gagged, with a rope noose around her neck. Her cause of death was asphyxiation, which was caused by either manual strangulation before she was hanged, or from being hanged with a rope noose around her neck from the second story deck of the Coronado vacation home at which she was staying, located at 1043 Ocean Boulevard, and commonly known as the "Spreckels Mansion." The Coroner for the County of San Diego determined that she died on that date.

18.   Each of the Defendants named herein were present at the location where the murder of REBECCA occurred and all of them actively participated in the planning, implementation, execution and subsequent concealment of the scheme to murder REBECCA.

19.   Because the only individuals who know the true facts and sequence of events with absolute certainty are the decedent REBECCA and the Defendants themselves, the allegations made herein are made on information and belief based on the evidence that has been uncovered to date. Plaintiffs intend to seek leave to amend the Complaint as additional facts are developed and uncovered during the

1  course of discovery.

2  **ALLEGATIONS OF SPECIFIC ACTS**
3  **ATTRIBUTED TO EACH DEFENDANT**

4      20.   Due to DINA's prior incidents of confronting and threatening
5  DECEDENT, DINA's prior history of being unable to control her anger, her
6  ridiculing and publicly demeaning the DECEDENT, before and after her death, for
7  allegedly causing harm and the eventual death of DINA's six-year-old son,
8  Maxfield, as well as her extreme jealousy over the DECEDENT's relationship with
9  her ex-husband, Jonah Shacknai, Plaintiffs allege, based in further part on an eye
10  witness report placing DINA at the Spreckels Mansion the evening of the murder at
11  approximately 10:20 PM, and based further on NINA's own admission placing her
12  at the Spreckels Mansion the evening of the murder at approximately 10:30 PM,
13  both individuals planned and intended to confront Rebecca Zahau over an accident
14  the prior day when DINA's son and NINA's nephew Maxfield fell over a second
15  floor railing at the Spreckels Mansion, causing him brain damage and eventually his
16  death on July 16, 2011. DECEDENT was babysitting Maxfield at the time of the
17  fall.

18      21.   Plaintiffs allege, based in part on the multiple abrasions, found
19  throughout her body including but not limited to her hips, right hand, right shoulder,
20  left forearm, and left hand, the presence of multiple blood drops on the second story
21  carpet near the entrance of the northwest bedroom and bathroom shower and a
22  knocked over chair within the northwest bedroom, and a scream for "HELP!" heard
23  from a neighbor of the Spreckels Mansion that DINA and NINA aggressively
24  confronted REBECCA.

25      22.   Further, based on the on the mud found on DECEDENT's feet and
26  four subgaleal hemorrhages on the back right side of her head, in response to the
27  aggressive confrontation from Defendants DINA and NINA, DECEDENT, fearing
28  for her safety, attempted to flee the residence. However, before DECEDENT could

evade her attackers, she was struck four times on the back of the head with a blunt object by either DINA or NINA, rendering her unconscious. Plaintiffs believe that at this time, ADAM, who had taken an Ambien earlier in the evening and was sleeping in the guest house at the residence, was awakened by the commotion and came to the scene.

23.    Once confronted with the reality that DECEDENT would eventually regain consciousness, and thereafter probably disclose information about this incident and possibly other information of a personal nature that could cause public humiliation and embarrassment to Defendants and Jonah Shacknai (i.e., the ex-husband of DINA, father of Maxfield, brother of ADAM and the boyfriend of the DECEDENT), the Defendants entered in to a conspiracy and common scheme to murder the DECEDENT and hide their involvement.

24.    Due to the lack of markings on her body evidencing her being dragged back into the house, Plaintiffs allege that ADAM carried the DECEDENT back into the house. Based on the facts that DECEDENT was found naked, yet still wearing multiple wristbands on her wrists and that the clothing she was wearing on that date was not found at the scene of the murder, Plaintiffs allege that once inside the residence, the Defendants stripped off her clothing.

25.    Based on the tape residue found on DECEDENT's legs, and the fact that no tape with similar adhesive was found at the scene,  Plaintiffs allege that the Defendants first restrained DECEDENT with tape, and gagged her, while they were devising and planning the rest of the scheme, and later removed the tape from the scene.

26.    Thereafter, the Defendants contrived an elaborate scheme to murder REBECCA and conceal their involvement.  DINA previously resided in the residence, and thus was familiar with where to find items necessary to further the scheme, including, *inter alia*, the adhesive tape and rope used to bind and hang the DECEDENT.

27.     The final scheme agreed to that evening by the Defendants involved binding DECEDENT's hands (behind her back) and ankles with rope they found at the residence. Plaintiffs allege that based on the knots having nautical qualities and ADAM being a tug boat captain with experience tying nautical knots, that ADAM bound the DECEDENT. Plaintiffs further base this allegation on the fact that the ropes had the same black paint residue found on DECEDENT's nipples, thus implicating the person who tied the knots as the person who also pinched the Decedent's nipples, and that ADAM had admitted to masturbating to pornography on his cell phone that evening, the further inference being that the two instances of sexual behavior are consistent with ADAM's state of mind that evening. Plaintiffs further base this allegation on the fact that multiple contusions in the area subjacent to the ligatures around her lower legs, a result of the strength of the binding and the lack of rope fibers found on REBECCA's hands.

28.     The Defendants also placed a blue t-shirt around her neck and stuffed it in her mouth, using it as a gag to both muffle her screams and cover up any marks that would suggest murder.

29.     Based on the injuries sustained by REBECCA and the amount of strength needed to create such injury, Plaintiffs allege that in the early hours of July 13, 2011, ADAM choked REBECCA to death. REBECCA sustained a left cricoid fracture, a fracture of the left arm of the hyoid bone, and a fracture fo the base of the left superior horn of the thyroid cartilage, all injuries which commonly occur with strangulation and is unlikely to occur with a hanging. Furthermore, Rebecca's face was described as congestive, and petechiae was found on REBECCA's eyelids, upper and lower palpebral conctivae, and her inner, upper, and lower lip mucosa, periorbital regions and on the left side of her face between he eye, both her eyes fine and coarse petechia above the ligature furrow, extending from the chin to the angles of the mandible, which commonly occurs with strangulation, where there is no complete occlusion of the vasculature, unlike in a full-suspension hanging.

30.   Once they murdered REBECCA, DINA instructed ADAM to leave a cryptic message on the door outside the room where the murder was committed. The message was painted using black paint at a height that is consistent with an individual who is approximately the height of ADAM. The message read: "SHE SAVED HIM. CAN YOU SAVE HER."

31.   ADAM, based on black paint residue found on the noose, then tightened the noose around the neck of the DECEDENT and attached the rope to the base of the bed. ADAM then picked up REBECCA, then threw her over the edge of the adjacent balcony. Either DINA or NINA was sitting on the bed to which the rope was secured, to ensure that the bed remained anchored to the floor as evidenced by the bed having moved less than a foot. While the scheme was being perpetrated, Defendants DINA and NINA also acted as look outs to avoid detection and encouraged ADAM to commit the acts alleged herein. Although each of the Defendants was in part responsible for putting the DECEDENT in harms way, none of them made any effort to help her or to save her from the injuries that eventually resulted in her death.

32.   The Defendants were careful to remove any evidence of their involvement, including the disposal of the tape used to initially bind her lower legs, and REBECCA's clothes that she was last seen publicly in on July 12, 2011.

33.   Defendants lastly set out to stage a suicide, and hide their involvement first by removing and later disposing of the various articles of clothing REBECCA was last seen wearing publicly on June 12, 2011, in an effort to conceal DNA evidence and evidence of having stripped REBECCA of her clothing,  laying out clothing matching Zahau's size including a white undershirt, black long sleeve t-shirt and blue jeans in an effort to divert attention to her last known clothing in the inevitable investigation into REBECCA's death. Defendants then wiped down several surfaces, including but not limited to the second story balcony door in an effort to remove fingerprints and DNA. Once the staging was complete, the

SECOND AMENDED COMPLAINT

1  Defendants fled the scene, instructing ADAM to call the police in the early morning
2  with claims of suicide.

3  ## DAMAGES

4      34.   As a proximate result of Defendants' acts and/or omissions, Plaintiffs
5  PARI and ROBERT ZAHAU were, and PARI still is, mentally and emotionally
6  injured and otherwise damaged by DEFENDANTS' wrongful conduct, including
7  but not limited to their loss of familial relations and REBECCA's society, comfort,
8  protection, companionship, love, affection, solace and moral support. Further,
9  PARI and ROBERT ZAHAU were dependent on REBECCA for financial support
10 and are thus entitled to pecuniary damages, which reflect the financial benefits they
11 were receiving from REBECCA at the time of her death and reasonably expected in
12 the future. Plaintiffs are also entitled to the reasonable value of funeral and burial
13 expenses.

14     35.   As a proximate result of Defendants' acts and/or omissions, REBECCA
15 is entitled to recover for all damages that might have been recovered had she lived
16 pursuant to Cal. Code Civ. Proc. § 377.34.

17     36.   As a further proximate result of Defendants' acts and/or omissions,
18 REBECCA ZAHAU suffered damage to and loss of property prior to her death,
19 according to proof.

20     37.   In committing the acts and omissions complained of herein, all
21 individual Defendants acted with malice, oppression and deliberate and reckless
22 disregard for REBECCA's personal safety and well-being, and the rights of Plaintiff
23 PARI and ROBERT to familial relations with, and support from, REBECCA.
24 Plaintiffs are thus entitled to an award of punitive damages against each of them.

26 **FIRST CAUSE OF ACTION**
(Wrongful Death)
27 (By Plaintiffs PARI ZAHAU and ROBERT ZAHAU, Deceased, Through His
Personal Representative, MARY ZAHAU-LOEHNER)

-11-
SECOND AMENDED COMPLAINT

38.     Plaintiffs re-allege and incorporate by reference herein paragraphs 1 though 37 of this Complaint except those allegations relating to punitive damages.

39.     On or about July 13, 2011, Defendants, and each of them, entered into a common scheme and plan to murder REBECCA, and in furtherance thereof intentionally, willfully, wantonly and maliciously caused physical harm to REBECCA by stalking, attacking, choking, gaging, binding, and hanging her at the Premises. Each of the defendants had his/her own motives for committing these wrongful acts, including anger and revenge against REBECCA arising from the fatal injuries suffered by six-year-old Maxwell Shacknai, nephew to ADAM, niece to NINA and daughter to DINA, while REBECCA was taking care of him two days before she was murdered. In addition, Defendant DINA SHACKNAI was extremely jealous of REBECCA's relationship with her ex-husband, JONAH SHACKNAI and her now deceased son, Maxwell.  The Defendants were further motivated to silence REBECCA in order to keep her from disclosing matters that could prove extremely embarrassing to the Defendants and their families.

40.     Each of the acts alleged herein were done with a wanton, reckless disregard for the rights of the DECEDENT and with the full knowledge that she would die as a result of said acts.

41.     As a result of Defendants' intentional, reckless, wanton and unlawful conduct, REBECCA sustained severe and serious injury to her person, which was the sole cause of her death.

42.     By the performing the acts and/or omissions set forth above, Defendants, and each of them, wrongfully and proximately caused the death of REBECCA.

43.     As a proximate result of said Defendants' wrongful conduct, and the death of REBECCA, Plaintiffs PARI and ROBERT ZAHAU have been injured and suffered damages resulting from the loss of comfort, society, attention, services and support of her daughter, REBECCA, in an amount according to proof.  These

1  Plaintiffs were also financially dependant on REBECCA and thus were also

2  damaged by the loss of financial support they were receiving from REBECCA at the

3  time of her death and reasonably expected to receive in the future.

4      44.    As a further actual and proximate result of said Defendants'

5  negligence, Plaintiffs incurred funeral and burial expenses in and amount according

6  to proof at trial.

7      45.    Pursuant to C.C.P. Sections 377.60 and 377.61, Plaintiffs have brought

8  this action, and claim damages from said Defendants for the wrongful death of

9  REBECCA, and the resulting injuries.

10                      **SECOND CAUSE OF ACTION**

11                   (Survival Action - Battery C.C.P. 377.30)
       (By Plaintiff REBECCA ZAHAU, Deceased, Through Her Personal Representative,
12                      MARY ZAHAU-LOEHNER)

13     46.    Plaintiffs re-allege and incorporate by reference herein paragraphs 1

14  though 45 of this Complaint.

15     47.    On or about July 13, 2011, after the foregoing cause of action arose in

16  her favor, REBECCA, who would have been the Plaintiff in this action if she had

17  lived, died as the legal result of the Defendants' intentional acts.

18     48.    On or about July 13, 2011, Defendants, and each of them, intentionally,

19  willfully, wantonly and maliciously caused immediate physical harm to REBECCA

20  by stalking, attacking, choking, gaging, binding, and hanging her at the Premises.

21     49.    Said actions caused serious physical injury to the DECEDENT and

22  eventually her death.

23     50.    At no time during the events described in the preceding paragraphs

24  above, nor at any time prior thereto, did REBECCA consent to any of the

25  Defendants' conduct, which resulted in her death.

26     51.    The attack was perpetrated by all Defendants with the full knowledge

27  that the battery upon REBECCA's body would directly lead to her death.  Each of

28  the acts alleged herein were done with a wanton, reckless disregard for the rights of

1  the DECEDENT and with the full knowledge that she would die as a result of said
2  acts.

3       52.    As a result of Defendants' intentional, reckless, wanton and unlawful
4  conduct, REBECCA sustained severe and serious injury to her person, which was
5  the sole cause of her death.

6       53.    As a further result of Defendants' actions, REBECCA is entitled to
7  recover all damages that might have been recovered had she lived pursuant to Cal.
8  Code Civ. Proc. § 377.34.

9       54.    The aforementioned actions of Defendants, and each of them, were
10  willful and wanton in that Defendants demonstrated a conscious and deliberate
11  disregard of human life and dignity, rights, safety and interests of the DECEDENT
12  by stalking, attacking, choking, gagging, binding and hanging her at the Premises
13  with the full knowledge that she would die as a result of said acts.

14       55.    In doing the acts herein alleged, Defendants, and each of them, acted
15  with extreme oppression, fraud and malice, and Plaintiffs are entitled to punitive
16  and exemplary damages in an amount to be proven at the time of trial.

17                   **THIRD CAUSE OF ACTION**
   **AGAINST DEFENDANTS DINA SHACKNAI AND NINA ROMANO ONLY**
18                  (Survival Action - Assault C.C.P. 377.30)
19  (By Plaintiff REBECCA ZAHAU, Deceased, Through Her Personal Representative,
                      MARY ZAHAU-LOEHNER)

20       56.    Plaintiffs re-allege and incorporate by reference herein paragraphs 1
21  though 55 of this Complaint.

22       57.    On or about July 13, 2011, after the foregoing cause of action arose in
23  her favor, REBECCA, who would have been the Plaintiff in this action if she had
24  lived, died as the legal result of the Defendants' intentional acts.

25       58.    On or about July 13, 2011, Defendants DINA SHACKNAI and NINA
26  ROMANO intended to cause or place REBECCA in apprehension of harmful and
27  offensive contact by threatening her, stalking her and attacking her at the Premises.

28       59.    On or about July 13, 2011, Defendants DINA SHACKNAI and NINA

1 | ROMANO were substantially certain that their acts would cause harmful and

2 | offensive contact

3 |      60.    As a result of Defendants DINA SHACKNAI and NINA ROMANO's

4 | acts as alleged above, REBECCA was put in immediate apprehension of harmful or

5 | an offensive contact with REBECCA's person.

6 |      61.    At no time during the events described in the preceding paragraphs

7 | above, nor at any time prior thereto, did REBECCA consent to any of the

8 | Defendants' conduct, which resulted in her death.

9 |      62.    As a further result of Defendants' actions, REBECCA is entitled to

10 | recover all damages that might have been recovered had she lived pursuant to Cal.

11 | Code Civ. Proc. § 377.34.

12 |      63.    In doing the acts herein alleged, Defendants DINA SHACKNAI and

13 | NINA ROMANO acted with extreme oppression, fraud and malice, and Plaintiffs

14 | are entitled to punitive and exemplary damages in an amount to be proven at the

15 | time of trial.

16 |

17 | **FOURTH CAUSE OF ACTION**

(Survival Action - Negligence, C.C.P. 377.30)

18 | (By Plaintiff REBECCA ZAHAU, Deceased, Through Her Personal Representative,

19 | MARY ZAHAU-LOEHNER)

20 |      64.    Plaintiffs re-allege and incorporate by reference herein paragraphs 1

21 | though 63 of this Complaint, except those relating to punitive damages and reckless

22 | or intentional conduct.

23 |      65.    To the extent that any individual Defendant did not directly participate

24 | in the malicious acts that caused REBECCA's death, their knowledge of and/or

25 | participation in the conspiracy to murder REBECCA created a duty to warn

26 | REBECCA or take reasonable efforts to prevent the other Defendants from

27 | executing the plan, which they failed to do.

28 |      66.    Defendants, and each of them, breached their duty by failing to warn

1   REBECCA of the Defendants' scheme and/or by failing to prevent the other
2   Defendants from carrying out the murder.

3       67.   Defendants, and each of them, proximately caused the death of
4   REBECCA as a result of their negligent conduct and/or negligent failure to act as
5   set-forth herein.

6       68.   The damages alleged herein are the proximate result of Defendants'
7   negligent actions, including damages that might have been recovered had
8   REBECCA lived pursuant to Cal. Code Civ. Proc. § 377.34.

9

10                          **FIFTH CAUSE OF ACTION**
                    (Survival Action - Conversion, C.C.P. 377.30)
11  (By Plaintiff REBECCA ZAHAU, Deceased, Through Her Personal Representative,
                          MARY ZAHAU-LOEHNER)
12

13      69.   Plaintiffs re-allege and incorporate by reference herein paragraphs 1
14  though 68 of this Complaint.

15      70.   Immediately prior to her murder, REBECCA owned the clothing she
16  was wearing and also owned and possessed other personal property.

17      71.   By the performing the acts and/or omissions set forth above,
18  Defendants, and each of them, intentionally and substantially interfered with
19  REBECCA's personal property taking possession and control of her clothing and
20  took and/or destroyed her other personal property according to proof prior to
21  carrying out the murder of REBECCA.

22      72.   At no time during the events described in the preceding paragraphs
23  above, nor at any time prior thereto, did REBECCA consent to any of the
24  Defendants' conduct, which resulted in the unlawful taking of her clothing and
25  taking and/or destruction of her personal property prior to her murder.

26      73.   As a result of Defendants' intentional, reckless, wanton and unlawful
27  conduct, REBECCA's clothing was taken and personal property was taken and/or
28  destroyed.

74.     As a further result of Defendants' actions, REBECCA is entitled to recover all damages that might have been recovered had she lived pursuant to Cal. Code Civ. Proc. § 377.34.

75.     In doing the acts herein alleged, Defendants, and each of them, acted with oppression, fraud and malice, and Plaintiffs are entitled to punitive and exemplary damages in an amount to be proven at the time of trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each for them, as follows:

1.     For compensatory damages according to proof;

2.     For special damages according to proof;

3.     For reimbursement of funeral expenses and costs of burial;

4.     For pecuniary damages according to proof;

5.     For personal property according to proof;

6.     For interest on all sums awarded, according to proof;

7.     For punitive and exemplary damages, according to proof;

8.     For costs of suit incurred herein;

9.     All other relief to which Plaintiffs may be entitled under law.

DATED: May 21, 2015                         GREER & ASSOCIATES, A.P.C.


C. Keith Greer, Esq.
Attorneys for Plaintiffs

| SAN DIEGO COUNTY SUPERIOR COURT | | FOR COURT USE ONLY |
|---|---|---|
| ZAHAU v. SHACKNAI, et al. | | |
| ATTORNEY(S) NAME AND ADDRESS<br>TELEPHONE NUMBER<br>C. Keith Greer, Esq.<br>17150 Via Del Campo, Ste. 100    (858) 613-6677<br>San Diego, CA 92127 | | |
| ATTORNEY(S) FOR:<br>Plaintiffs | HEARING: DATE-TIME-DEPT | CASE NUMBER<br>37-2013-00075418-CU-PO-CTL |

## DECLARATION OF SERVICE

I, the undersigned, declare:

I am, and was at the time of service of the papers herein referred to, over the age of 18 years, and not a party to this action. My business address is 17150 Via Del Campo, Ste. 100, San Diego, CA 92127.

I served the following document(s):

- **SECOND AMENDED COMPLAINT FOR: (1) WRONGFUL DEATH, (2)ASSAULT, (3) BATTERY, (4) NEGLIGENCE, (5) CONVERSION JURY TRIAL DEMANDED**

On the parties in this action addressed as follows:

### *SEE ATTACHED SERVICE LIST BELOW ON PAGE 2 OF 2*

[X]   **For service on all parties(BY MAIL)** I placed a true copy in a sealed envelope addressed as indicated above. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal collection date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[]   **For service on all parties(BY FACSIMILE TRANSMISSION)** I caused such document to be transmitted to the addressee(s) facsimile number noted above. The facsimile machine I used complied with Cal. Rules of Court Rule 2003(3) and the transmission was reported as complete and without error pursuant to Rule 2008(e)(3). Pursuant to Rule 2008(e)(4), I caused the machine to print a transmission record of the facsimile transmission, a copy of which is attached to this declaration

[]   **For service on all counsels (BY PERSONAL SERVICE)**
    []   By personally delivering copies to the person served.
    []   I delivered such envelope by hand to the offices of the addressee pursuant to CCP § 1011
    []   I caused such envelope to be delivered by hand, via Advanced Attorney Services messenger service, to the office of the addressee

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on **May 21, 2015** at San Diego, California.

**Robert M. Wilson**
**Paralegal to C. Keith Greer, Esq.**

RE: ZAHAU v SHACKNAI, et al.
Proof of Service
Page 2 of 2

Kim Schumann, Esq.
Stephanie Tran, Esq.
SCHUMANN ROSENBERG
3100 Bristol Street, Suite 100
Costa Mesa CA 92626
Fax: 714-850-0551
*Attorneys for Dina Shacknai*

John Marino, Esq.
Darin Lee Wessel, Esq.
Manning & Kass Ellrod Ramirez Trester LLP
550 West C Street Ste. 1900
San Diego, CA 92101
Fax: 619-515-0268
*Attorneys for Nina Romano*

Robb C. Adkins, Esq.
Krista M. Enns, Esq.
Ian L. Papendick, Esq.
WINSTON & STRAWN LLP
101 California Street
San Francisco, CA 94111
Fax: 415-591-1400
*Attorneys for Adam Shacknai*

Mark Vranjes, Esq.
Ryan R. Fick, Esq.
Grimm, Vranjes & Greer LLP
P.O. Box 129012
San Diego, CA 92112
Fax: 619-233-6039
*Attorneys for Adam Shacknai*

Frederick Gaston, Esq.
GASTON & GASTON, A.P.L.C.
1010 Second Avenue, 24th Floor
San Diego, CA 92101
Fax: 619-398-1887
*Attorney for Plaintiffs*